All right. Good morning. Mr. Marshall, we'll hear from you first. Thank you, Your Honor. May it please the Court. In its brief at page 34, the FDIC concedes that banks are expected to self-identify the disclosure issues identified in Fill 32 and promptly correct them. The FDIC attempts to escape the conclusion that the Fill 32 is a rule by arguing that Fill 32 simply repeats the representations or the obligations set forth in Section 5 of the FTC Act. But the FTC Act is completely silent on these issues, not a single reference in Section 5 to these issues. And a logical extension of the FDIC's argument is that it can pronounce obligations and legal consequences and then simply take the position that those obligations and consequences are embedded somewhere in Section 5, even though they're not called out. And that would allow the FDIC to pronounce obligations with respect to regulated entities without following the APA in any way, shape or form. And the central issue in this case is whether Fill 32 is binding. That's the central issue in the case, whether it's final agency action. According to Iowa League of Cities, an agency pronouncement will be considered binding as a practical matter if it either appears on its face to be binding or is applied by the agency in a way that indicates it's binding. And here, here, Fill 32 appears on its face to be binding, and it specifically says that the agency will enforce it. Four features of Fill 32 cause that conclusion. First, page 1 of Fill 32 states that in compliance examinations, the FDIC has determined that if a bank charges multiple NSF fees but the practice is not adequately disclosed, the lack of disclosure is a material UDAP violation. That's new. It appears nowhere else in the law. Well, suppose there were no Fill 32. Could the FDIC, through a bank examination, reach that conclusion? It is true that the FDIC has great discretion when it's doing its examinations of a bank, and it can determine what safety and soundness issues exist within that bank. And presumably, it could decide that disclosures that the bank has are not adequate in some way. That's completely different, however, than saying there is a rule that these specific disclosures must be incorporated into your materials. Well, I guess there's a question whether this Fill 32 is such a rule. But I was asking a different question, which is whether they could, you say, in a particular examination, conclude your disclosures were inadequate. Correct. And they could impose some kind of sanction, and you could have a path to judicial review if you disputed it. Exactly. You could dispute it. You could push back on it. So if there were no Fill 32, couldn't they do the same thing you're objecting to through individual bank examinations? No. It's qualitatively different, because under these circumstances, there is now a rule that specifically requires these banks to do these things. And in an examination, it is very different when the bank has not complied with an existing rule versus simply being subject to what the FDIC, in its discretion under that particular advisory scheme, decides is inappropriate. It's a completely different position for the bank to be in. Completely different position. How is it different? Because it's different when, A, the bank is told by the FDIC that the bank believes a particular disclosure is inadequate, and the bank disagrees, and the bank can push back, and there's a dispute regarding that issue. If, however, there's a rule in place that specifically says the disclosure is inadequate, then the bank is in a much different position from a regulatory and penalty standpoint than it would be otherwise. And, Your Honor, What do you mean by that? Are you saying they couldn't dispute it in the examination? It puts them in a much different position in disputing than they would be if there were no rule. Puts them in a much different position than if there is an argument that they have actually violated an existing rule. Puts them in a different position in terms of the pushback, and it puts them in a different position in terms of penalties and how the FDIC is going to treat them. Is that because the agency has already taken a position on whether a violation has occurred? Correct. And the, again, What about the language in this fill that says it will depend on the particular circumstances and so forth? I'm sorry, Your Honor? Isn't there language in this fill 32 that indicates a decision will be fact specific and context specific about whether the disclosures are adequate or inadequate in a particular scenario? No, I would respectfully disagree with that. I would suggest that the fill is direct and straightforward, that these disclosures need to be made, and if they aren't made, then it's a violation of Section 5. It's a UDOT violation. Which disclosures do you think? Must be made. On the top of page 2, there's five. The first is that the disclosures must clearly and conspicuously disclose the amount of an NSF fee. You don't have to read them all. I know what you're referring to. Those are the five. So those are the five that specifically say what must be done. And when you say the bank would be in a different position in terms of penalties, what do you mean by that exactly? Well, the FDIC has great discretion, as it always has, in terms of doing these supervisory examinations. And it can touch on a myriad of things. So they could come in later and say, you didn't notify people properly of these multiple NSF charges, and we think that's an unfair practice. And the bank can then push back and say, no, we have them. If the bank closes, you could be sanctioned. Right. How would it be different if this fill 32 were in place? Because the FDIC would have the ability to take the position that they were advised of this through rulemaking, and they failed to comply with it. How could they take that position when they say it's not a rule? Well, we're suggesting it is a rule. They're saying it's not a rule, but under the law... Go ahead. Under the law, the question is whether it's written as a rule regardless of what the FDA's decision is. I know, but you're trying to say they acknowledge it's not a rule, but they might sanction us as though it's a rule, and that's why you have standing. Right. It is a rule. Yeah. What we're suggesting is... Wouldn't there be a stop from trying to sanction you as though it were a rule? No, I don't think they would. I think that their position, as they've expressed it in this fill, is that if these things... They're saying exactly what they're going to do in the fill. They're saying in the fill, if you don't do these things, you will be sanctioned. You have to take these precautions. You have to make these changes. If you find out that as you look at these issues that you actually have not done these in the past, you need to make restitution. You need to make the disclosures. And if you do those things, you'll be okay. If you don't do those things, then you'll be sanctioned. And the fill actually specifically says, in focusing on representment issues, the FDIC will not cite violations that have been self-identified and corrected, which is a safe harbor. And it goes on to say, for violations that have not been self-identified and corrected, the FDIC will evaluate enforcement actions, including civil money penalties. So the point that we're making is, under the rules that apply to rulemaking, namely, is the language used by the fill mandatory? Does it cause a reasonable bank that reads this fill to believe that they must now make changes in their disclosures, or if they don't make those changes, will they be sanctioned in some way by the FDIC? And that is what the FDIC is saying. Well, aren't they really saying that they recognize there is a safe harbor if you do these things, but if you don't do these things, our supervisory approach is going to be, we'll examine this, and if we find that to be in violation of UDAP or Dodd-Frank, that then we will enforce that. Isn't that, that seems to me to be a different thing than what you're saying, but I might not be very smart on this. Well, what we're suggesting it says is that it believes that these things are UDAP violations. That's what the page one of fill 32 says. It's determined, FDIC has determined, that if a bank charges multiple NSF fees, but the practice is not adequately disclosed, it's a material UDAP violation. That's what it says. And it's not allowed to do that. It specifically says that. And then it goes on to say, here's what we're talking about. Here's the disclosures that if you don't have in there, are inadequate. It then says if you find these things, you have to take full corrective action, including restitution. And you must promptly correct the disclosures. And then again, as I just mentioned, it finishes by saying, and we're telling you we're going to look at these things, and if you don't do them, there's going to be a problem. And a reasonable bank, what we're saying, Your Honor, is a reasonable bank reading this today really has no choice but to take the language on its face and say to themselves, either we make these corrections now, either we change our behavior and make these corrections now, or we will be subject to sanctions. We take the FDIC at its word. And it's causing, and it's causing that kind of conduct from the banks. But those aren't sanctions that would be greater than the sanctions that would accrue if this just came up in an individual examination, are they? They're the same sanctions. They're just giving you advance notice that you may be subject to sanctions. Well, the FDIC has discretion as to how they're going to issue sanctions. And the concern is that the FDIC is saying here in advance that we are going to do these things if you don't correct them. And then those sanctions could be enhanced if these rules were not in place. And again, it comes back to the issue, Your Honor, of if there is no rule, that puts the bank in a different position in pushing back against the FDIC than it does if there is a rule. So you'd rather the FDIC not give a heads-up, so to speak, but just do this through individual bank examinations? Well, no. Have the word get around through the banking industry after some individual banks are sanctioned? Well, what the banks would prefer is that the FDIC go through the proper rulemaking procedures and notice and comments so that the banks could have input on what should or shouldn't be in there. And perhaps at the end of that process, if it had been followed, we wouldn't have this fill at all and we wouldn't have these directions that the banks have to do these things. Because there's all kinds of things from the bank's standpoint that the FDIC did not take into consideration when it issued these mandates, how much it was going to cost the banks to be making these changes, whether the banks even have the proper software in place to be able to do these things, really how significant or insignificant they are based on the fact that it's really the merchant that is the one that initiates the representment as opposed to the bank, whether the obligations that merchants are under under other regulations would perhaps subsume some of these issues, those sorts of things. If there was a notice and comment procedure, then the banks could present those items and would have the opportunity to perhaps head off this issue before it even came up. Now, is the FDIC required, in your view, to regulate this matter through rulemaking or could it proceed solely through adjudication or through bank examination? No. Well, this rule would have to be on through rulemaking. If they wanted to make a rule, I understand they'd have to do rulemaking. But my question is whether they could forgo making a rule and just in an individual examination or examinations come to the conclusion that certain disclosures were inadequate and so forth.  As I mentioned before, I think that FDIC has discretion to look at disclosures and determine whether they're appropriate. Unless there's any other questions, I'd like to reserve the rest of my time. You may. You may. Thank you for your argument.  Mr. Morelli, we'll hear from you. Thank you, Your Honor, and may it please the Court. My name is Michael Morelli and I represent the FDIC. Bank supervision is an iterative and fact-dependent process by nature. It requires effective and ongoing communication between banks and the FDIC. This isn't just window dressing. It's actually a core feature underpinning the entire process. And Fill 32 is a prime example of that process in action. The FDIC began by conducting exams and noticing an emerging risk in 2021. Based on that, it issued a public notice. Its supervisory highlights publication noting that it was encountering these issues. And then later that year in 2022, issued an initial guidance document, Fill 40-2022, and I apologize for the convoluted nature of the conventions, but that was in place. And then the FDIC, after conducting more examination activities and incorporating more feedback from the banks, tailored their guidance even further and issued Fill 32. Why not just go through the actual rulemaking process then? Excuse me? Why didn't the FDIC just go ahead and go through the administrative rulemaking process? Well, it did go through an administrative rulemaking process when it issued Part 302, 12 CFR Part 302, which expressly deals with how the FDIC develops and treats supervisory guidance in the examination process. Let me get to maybe a more pertinent question. Under the FDIC's reasoning, would any party ever have standing to challenge a final agency action that declared something to be an unfair or deceptive trade practice? If there was in the abnormal scenario where there was an FDIC statement outside of an examination finding saying that something is categorically, in all circumstances, an unfair and deceptive practice, and there was no basis for that in the FDIC's previous policies, which incorporate standards as developed by the FTC. In that abnormal scenario, I think it would be a stronger case that that is a final agency action, but in this case... But if it's your view that the statute, which does not even speak directly to the conduct it issued, it's your position that that statute covers this already, and therefore no one has standing to challenge this regulation, I don't see why they wouldn't always foreclose any challenge to a final agency action as to an unfair or deceptive trade practice. Your Honor, if I'm understanding your question correctly, our position first is that this is not a regulation, that it's not a final rule, it's only guidance. The second is that the FDIC does not have rulemaking authority under the FTC Act. We acknowledge that. So it's legally incapable of issuing a regulation to that effect. I think the question then boils down to whether there's a statement from the FDIC that is practically binding on the bank that is not a rule. And our position is that this is not practically binding, and I believe my colleague on the other side said whether it would be reasonable for a bank to interpret Fill 32 as essentially having that effect. And our position is when you read the actual text of Fill 32, when you actually look at the context in which it was issued, which includes the FDIC's regulation on this exact topic, Part 302, that's not reasonable. If you do take the FDIC at its word... Let's look at it this way. If you're a regulated business, and I'm your regulator, and I have power to penalize you, and I send you a document that says I expect you to take certain actions, and I threaten to take enforcement action if you don't, why is that guidance rather than a directive? It, again, depends on context, Your Honor. And in this instance, if you look at the actual text of the regulation, it defines what the FDIC considers to be supervisory guidance. And in what it considers to be supervisory guidance, it incorporates supervisory expectations. Now, that supervisory expectations and that nomenclature didn't just appear in the regulation. It was the product of nearly a decade-long effort to assure the industry that when the FDIC issues supervisory guidance, it means what it says. It is guidance. It is meant to provide generalized advice aimed at helping you address the risks that are present at your bank, but there's enough room in the supervisory process for you to present your views and say, actually, given the unique circumstances that are going on at my bank, X, Y, and Z principles should apply instead of A, B, and C. There's room built into the process for those conversations to be had. Now, on the question whether anyone would ever have standing, suppose the bank, a bank was sanctioned for not giving what the FDIC viewed as adequate disclosures. Could that be challenged? Sanctioned in the sense of there being an enforcement action having been brought? Absolutely, Your Honor. Yeah, there's an established administrative process that would begin with a notice of charges, would be going through here, and we outline this in our brief. I don't mean to reiterate it all here. Okay, so you're saying, are you saying that would be the context in which someone could challenge a conclusion that failure to give these sorts of disclosures is an unfair practice? If the FDIC, yes, it would be. So that would mean they would have to wait until an enforcement action has taken place. They couldn't challenge the regulation. If it was a regulation. Again, we don't believe this is a regulation, and because of the... So they have to wait until they've been penalized in order to have standing. Not necessarily, Your Honor. If, because this brings into play, and if I'm misconstruing where your question is going, the line of cases that begins with frozen foods and Hawks and those, where there was an agency determination about a specific practice that effectively left the regulated entity with a Hobson's choice. It was really two improper choices. It's either take on these really significant costs or risk an enforcement action by virtue of having violated the order of the agency. Now, we think those cases are distinguishable because they left no further room for administrative fact-finding or determinations or deliberation, and that's not the case here. We're really still at the starting line with Fill 32. It's, as we've explained in our brief, it's meant to provide generalized advice about an emerging risk, but there's absolutely room for an examiner on the ground to listen to feedback from the bank about what may or may not be appropriate in their given circumstances. Where is the wiggle room in the guidance that was provided? It seems very specific. The wiggle room is provided by Part 302 itself, where the FDIC binds itself to not being able to treat supervisory guidance as the basis of an enforcement action or even the basis of supervisory criticism. And I want to elaborate on the supervisory criticism part because I think this is important to answering your question, Judge Grass, which the FDIC issued its initial statement about supervisory guidance in 2016, and in 2018, it took part in an interagency statement effectively expanding on what it had said in 2016. But there was a separate, after that, there was a petition for rulemaking from the industry saying that the statement should be codified as a regulation. And in that petition, they specifically say that supervisory guidance, or they acknowledge that supervisory guidance includes supervisory expectations and that best practices involve labeling it as supervisory guidance, which this is. The label says that it's supervisory guidance. But one, in the notice and comment process, one of the criticisms or feedback from the industry was that it was unclear whether that the statement saying that it will not form the basis of supervisory criticism also related to examination findings and the primary basis for doing that in the FDIC's examination process. And this is not necessarily squarely presented in the brief, but it's all in publicly available documents describing the FDIC's examination process, and I'm reciting from that. But it specifically, in the way that the regulation was codified, incorporated those examination findings and said it will not become the basis of a violation or citation for noncompliance for supervisory guidance. Which process were you just referring to? The examination process, Your Honor. No, no, I mean which rulemaking? The Part 302 rulemaking. The 302 rulemaking. Correct, Your Honor. This was raised in that rulemaking proceeding. It was, Your Honor. Yes, if you go and you look back at the preamble, you'll see that all of the issues in this case really are addressed. Are the examples used in supervisory guidance safe harbors? No, they're not. They're generalized examples and cannot be relied on either by the FDIC or the industry as categorical proof that one is in compliance or not in compliance. Can they be used for enforcement actions? No. Can they be as the basis of an enforcement action? No. And I know it's not squarely presented in the appellant's argument, but I did want to briefly touch on the Amici's argument about knowing willful or reckless disregard of the law and whether a fill could be used in that way. It's, first of all, there has never been an FDIC enforcement action that has used a fill in that way. To the best of my ability to look through, there was one instance in the last 15 years where the FDIC in a formal enforcement action even cited a fill. And the fill was, and that citation was only really a shorthand for the regulations and the standards that already applied. So, with that aside... But couldn't that be because those fills were guidance rather than directives? I mean, I think that's what the banks would say. But the nature of the conditional language that's in this fill is not necessarily unique to this fill. It appears in other fills, too. So, presumably, it would have also arisen in those contexts, too. But the point is, really, that the knowing, willful, or reckless disregard inquiry, the scienter inquiry, really depends on a knowledge of facts. It doesn't depend on a knowledge of law. So, that really would go to whether the risks identified are actually present at your institution and whether you have actual knowledge or knowledge of whether those risks are at your institution. And the Fill 32 couldn't be used as a stand-alone trigger for that. Now, could it theoretically be used in a deposition as a vehicle for  those facts? I suppose, but to the same extent that another guidance document from another agency on the same topic could be used, to the same extent that a law review article could be used, to the same extent that a newspaper article could be used. So, I think, for those reasons, the Amici's arguments, again, they aren't necessarily squarely presented, but in the interest of fully presenting the issue.  before with other supervisory guidance, this question of whether they amount to rules that can be challenged? I'm aware of one other instance in which the issue of whether an FDIC guidance document was a rule, it was a district court decision in the District of Columbia, and it found that they were not. And, importantly, I went back and I read the decision this morning, it included language in that fill that, about the FDIC supervisory expectations, and it still found that those expectations on their own really didn't alter or carry any direct legal consequences and for that reason we're not  Could you address the Fifth Circuit's reasoning in Texas versus EEOC and why you think that reasoning should not be applicable here? I believe our brief has a paragraph on this, and I forget what page, I apologize that I can't direct you to it. But, my recollection is that the EEOC document in that case was far more categorical and prescriptive in the steps that it would both take itself and that it that the industry would take also in the scenarios that were presented. I think that the language that the court used was that it read like a playbook of avoiding liability and there was also not a regulation comparable to Part 302 in play either. So, on that basis, you know, we think that there are cases different for both of those reasons. A, that the language is far more conditional in Fill 32 than it was in the EEOC case and also there isn't this extraneous regulation that really provides the backstop that the industry is looking for. Because at the end of the day, and I believe that you referred to this, Judge Colleton, they now have a court decision and three briefs saying specifically from the FDIC saying that this is not a rule, not a regulation and this is not final agency action. So, there would be questions about judicial estoppel if the FDIC ever attempted to use it in that way and the record as presented doesn't indicate that the FDIC is using it in that way. What's the name of the D.C. District Court decision that you re-read this morning? I believe it was the CFSA case, Your Honor. Okay. It's cited in your brief. It is cited in the brief on page 32. 32, that is correct, Your Honor. Yes. I see my time has expired. Thank you for your time. Very well. Thank you for your argument. Mr. Marshall, we'll hear rebuttal. Your Honor, I'm short on time. I'll make three quick points. First, with respect to the Community Financial Services case that the Court just mentioned, that case is completely different. In that case, and that's the only case that exists regarding a fill and whether it's guidance. And in that case, the expects language was the FDIC expected that banks would monitor their transactions. Period. That was it. More importantly, however, the plaintiffs in that case, Your Honor, conceded that the document was simply advisory guidance and was not a rule. So that case has no bearing on what we're talking about here. Second, counsel's discussion of the rules associated with FDIC guidance documents may be true, but this isn't a guidance document. So it's completely irrelevant to what we're talking about here. And finally, if I could revisit the conversation that I had with the Court earlier about the question of what happens if the FDIC has the ability to do these examinations anyway. And I mentioned the fact that the rulemaking would actually enhance or give the opportunity for additional penalties and the citation for that is USC Section 1818 Romanet 1 2. And that specifically provides that the FDIC is entitled to enhance money damages for what it considers to be knowing violations. And here, obviously, with a rule, there would be an opportunity to state that this is a knowing violation. And finally, this notion of that that issue would be knowledge of facts, not law, well, but that's exactly what the FDIC is saying. The FDIC is saying, if these facts exist and you don't know about them,     to the facts that the bank would know about in advance of an examination. I see my time is up. On your citation there, you started with USC. Did you mean to give a title of the code? Is it in Title 12? Yeah, I'm sorry. Yeah. I'm sorry. Yes, 12. Okay. Thank you. Yes. Very well. Thank you for your argument. Thank you. Thank you to both counsel. The case is submitted and the court will file a  in due course. That concludes the argument calendar for this morning and also for the week. The court will be in recess until further call of